## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| JACQUELINE HONE,<br><br>            Plaintiff,<br><br>v.<br><br>PRESIDENTE U.S.A., INC., CERVECERIA NACIONAL DOMINICANA, GRUPO LEON JIMENES, LTD., ADMINISTAFF, INC., GEVITY H.R., and PHILLIP MORRIS,<br><br>            Defendants. | Civil Action No. 07-5635 (HAA) (ES)<br><br>Civil Action |

---

**PLAINTIFF JACQUELINE HONE'S BRIEF IN OPPOSITION TO DEFENDANTS PRESIDENTE U.S.A., INC., GRUPO LEON JIMENES, LTD., CERVECERIA NACIONAL DOMINICANA AND GEVITY H.R.'S MOTION TO COMPEL STATUTORILY CONFIDENTIAL UNEMPLOYMENT RECORDS**

---

**NIEDWESKE BARBER, LLC**
98 Washington Street
Morristown, New Jersey 07960
Tele:   973-401-0064
Fax:    973-401-0061
www.n-blaw.com
Attorneys for Plaintiff Jacqueline Hone

On The Brief:
      Kevin E. Barber, Esq.
      Christopher W. Hager, Esq.

## **TABLE OF CONTENTS**

PRELIMINARY STATEMENT ................................................................................................. 1

POINT ONE.......................................................................................................................... 3
    DEFENDANTS' MOTION FOR STATUTORILY CONFIDENTIAL UNEMPLOYMENT
    DOCUMENTS IS WITHOUT BASIS AND SHOULD BE DENIED ..................................... 3

      A.   Plaintiff Hone's Testimony About the E-Mails With Leoni Marti During Her
      Employment .................................................................................................................... 5

      B.   Plaintiff Hone's Testimony About Forming Ubiquity, LLC, After Her Constructive
      Discharge ........................................................................................................................ 9

POINT TWO......................................................................................................................... 11
    DEFENDANTS' UNPRECEDENTED AND BASELESS REQUEST FOR AN ADVERSE
    INFERENCE SHOULD BE DENIED ............................................................................... 11

CONCLUSION....................................................................................................................... 13

## <u>TABLE OF AUTHORITIES</u>

**Cases**

<u>Baxter v. Palmigiano</u>,
   425 <u>U.S.</u> 308 (1976) .......................................................................................................... 14

<u>DiProspero v. Penn</u>,
   83 <u>N.J.</u> 477 (2005) ........................................................................................................... 7

<u>In re Closing of Jamesburg High School</u>,
   83 <u>N.J.</u> 540 (1980) ........................................................................................................... 7

<u>Kounelis v. Sherrer</u>,
   529 <u>F. Supp.</u>2d 503 (D.N.J. 2008) ................................................................................. 15

<u>Paff v. N.J. Dept. of Labor</u>,
   379 <u>N.J. Super</u>. 346 (App. Div. 2005) ............................................................................ 7

**Statutes**

<u>N.J.A.C.</u> § 12:15-2.1 ............................................................................................................ 7

<u>N.J.S.A.</u> 43:21-11(g) ...................................................................................................... 4, 6, 15

## **PRELIMINARY STATEMENT**

On behalf of Plaintiff Jacqueline Hone in this hostile work environment, sexual harassment case filed under the New Jersey Law Against Discrimination ("LAD"), this brief is respectfully submitted in opposition to the motion by Defendants Presidente U.S.A., Inc., Cerveceria Nacional Dominicana, Grupo Leon Jimenes, and Gevity H.R. (collectively "Defendants") to compel unemployment records that are statutorily confidential and barred from disclosure pursuant to <u>N.J.S.A.</u> 43:21-11(g), as well as irrelevant.

Defendants' motion is based on their allegation in the preliminary statement that they have "evidence" that "strongly suggests that Plaintiff resigned her employment in order to establish her own business." Defendants' motion, perhaps intentionally, omits any reference to the Plaintiff's deposition testimony about the very documents upon which Defendants place heavy reliance. More specifically, Plaintiff Hone testified in deposition on March 23, 2009, about the electronic communications she had with Defendants' upper manager Leonidas Marti ("Marti") – one of the harassers – that are attached as Exhibits B and C to defense counsel's moving declaration. As demonstrated below, Plaintiff's testimony undermines Defendants' allegations about the Marti communications, which may be why it was completely ignored in the motion papers.

Additionally, Defendants fail to disclose Plaintiff Hone's testimony about the business entity she created one month **after** her constructive discharge, Ubiquity, LLC. This omission is conspicuous, given Defendants' baseless argument that she allegedly "began establishing" Ubiquity, LLC, "during the months preceding" her constructive discharge. (Db6). Plaintiff's testimony on this subject is also presented below.

1

Defendants' motion, which is laden with qualified, speculative argument about things Plaintiff Hone "may well have begun" while omitting any mention of her testimony about those very subjects or providing any competent evidence for that matter, is a motion without any basis to waive or otherwise override the unambiguous statutory confidentiality accorded to the documents demanded by Defendants.  Plaintiff respectfully requests that Defendants' motion to compel be denied.

Similarly, Plaintiff respectfully submits that Defendants' request for adverse inferences is baseless and should be denied.

## POINT ONE

### DEFENDANTS' MOTION FOR STATUTORILY CONFIDENTIAL UNEMPLOYMENT DOCUMENTS IS WITHOUT BASIS AND SHOULD BE DENIED

Plaintiff Hone has already produced documents of the New Jersey unemployment compensation benefits she received from September, 2007, forward. They are attached in Exhibit F to the moving Declaration of Eric A. Savage, Esq., which calls into question the assertion in Defendants' motion that the unemployment documents they seek are somehow relevant to Plaintiff's damages. (Db7).

Defendants contend, however, that Ms. Hone was also required "to produce copies of her application for unemployment benefits or any communications between plaintiff and the [New Jersey Department of Labor and Workforce Development] or transcripts of any hearings or proceedings which might have occurred" in response to their request for documents #22. See Savage Dec., Exh. I. Plaintiff, who does not possess these records, invoked the statutory confidentiality in those records pursuant to N.J.S.A. 43:21-11(g) and its implementing regulations.

In pertinent part, N.J.S.A. 43:21-11(g) provides as follows:

> [a]ll records, reports and other information obtained from employers and employees under this chapter, except to the extent necessary for the proper administration of this chapter, **shall be confidential and shall not be published or open to public inspection** other than to public employees in the performance of their public duties, **and shall not be subject to subpoena or admissible in evidence in any civil action or proceeding other than one arising under this chapter**. . . . (emphasis added).

Plaintiff also referred Defendants to the New Jersey Appellate Division's holding in Paff v. N.J. Dept. of Labor that the statute provided an "unambiguous" privilege that "protects documents and information that were provided by either an employer or employee", which the

court further described as a "clear and comparatively narrow statutory grant of confidentiality".

379 <u>N.J. Super</u>. 346, 356-57 (App. Div. 2005).  <u>Paff</u> explained that the privilege afforded by the

statute "is based on the source of the document or information: it protects documents and

information that were provided by either an employer or an employee." 379 <u>N.J. Super</u>. at 356-

57.

      The panel found support for its statutory interpretation in the New Jersey Supreme

Court's decision in <u>DiProspero v. Penn</u>, and its reaffirmation of the Court's "duty . . . to construe

and apply the [plain language of a] statute as enacted." 183 <u>N.J.</u> 477, 492 (2005)(quoting <u>In re</u>

<u>Closing of Jamesburg High School</u>, 83 <u>N.J.</u> 540, 548 (1980)).  The <u>Paff</u> Appellate Division found

further support for its interpretation in the applicable New Jersey regulations, which provides as

follows:

> No disclosure of information obtained at any time from, and
> identifiable to, specific workers, employers or other persons in the
> course of administering the New Jersey Unemployment
> Compensation and Temporary Disability Benefits Law shall be
> made directly or indirectly, except as authorized by the
> Commissioner or his or her representative in accordance with this
> subchapter.

<u>Id</u>. at 357 (quoting <u>N.J.A.C.</u> § 12:15-2.1).

      This regulation clearly bars production of the very documents Defendants demand

(application for benefits, communications, and hearing transcripts), which would necessarily

include "information obtained at any time from, and identifiable to [Plaintiff Hone] in the course

of administering the New Jersey Unemployment Compensation and Temporary Disability

Benefits Law".

Defendants' failure to address these authorities in their motion demonstrates the absence

of any legal basis for the motion.  As referenced above, their motion also fails to address Plaintiff

Hone's deposition testimony that demonstrates the fatal factual void in their motion.

**A.**    **Plaintiff Hone's Testimony About the E-Mails With Leoni Marti During Her Employment**

Defendants incompetently allege that Plaintiff's April 9, 2007, and May 7, 2007, e-mail

communications with Leoni Marti were "[i]n pursuit of her anticipated business venture"

because they purportedly provided Marti with Defendants' business information for Marti (who

was no longer employed by Defendants) to give to Defendants' competition in the Dominican

Republic.  (Db6).  One true copy of these e-mail communications is attached to the June 19,

2009 Declaration of Christopher W. Hager at Exhibit A.[1]

In contrast to Defendants' allegation was Plaintiff Hone's testimony about these exact e-

mails as follows:

> Q:    Okay.  Let's turn to the back page of [Exhibit JH-12] first.  The e-mail that you sent to . . . Mr. Marti on April 9th at 4:11 in the afternoon, do you recall what this was about?
>
> A:    Yes.
>
> Q:    Tell me.
>
> A:    He had asked me to send him the volume report for 2003.
>
> Q:    Volume report for what?
>
> A:    For the brand.
>
> Q:    For which brand.

---

[1] The Court may find it relevant to Defendants' instant baseless motion that their prior attempt to probe into all of Plaintiff's electronic communications by serving a sweeping subpoena on California-based Yahoo! was quashed by U.S. Magistrate Judge Edward R. Lloyd by Order dated July 21, 2008.  Hager Dec., Ex. B.

A:      Presidente.

Q:      Did you have any understanding about why he wanted that?

A:      They were compiling reports on all the brands and all the volumes. He had – there's a report that's published all the time with, like, the top brands and most of the brands.  But because Presidente had not made it onto the list, or his membership or something, he didn't have it.  So he wanted to know if I could give it to him.

Q:      Now, at this point, Mr. Marti is about two years out of Presidente, Correct?

A:      Correct.

Q:      He's no longer your boss, right?

A:      Right?

Q:      Did you view that there was anything improper in his asking you for the volume report?

A:      No.

        MR. HAGER:  Objection to the form.  You can answer.

Q:      And then if you look on the first page, there is an e-mail that you sent to Mr. Marti which concerns somebody named Mr. Cruz. Who is Mr. Cruz?

A:      His boss at the time.

Q:      At Barcelo?

A:      Yes.

Q:      By the way, just to go back for a   second to the e-mail on the second page, you said they were compiling reports on all brands and all volumes.  Who is the they?

A:      His company.  We all did it.

Q:      What do you mean we all did it?

A:      It's like an industry standard where at the end of each year, all the volumes are published, and made knowledgeable to each other.  So

6

we swapped, like, you know, Heineken sold like a million cases, Corona sold whatever amount of cases. Most of it you can get through the journals and the subscriptions that you belong to. If you're in the industry and you go to the distributor's house, they'll give it to you right then and there. As long as they're old reports or the years past. The[y're] industry numbers kind of like earnings.

Q:    Now at this point in May of 2007 and in April of 2007, you were an employee of Presidente. Is that correct?

. . . .

A:    Yes.

Q:    Was there a reason why you were    sending and receiving e-mails with Mr. Marti from what appears to be a personal e-mail account jhone201@yahoo.com?

A:    Leoni stayed in contact with a lot    of us. Myself, Elvira Hernandez, Candy          Hernandez, Francis Belliard. He calls everyone from time-to-time. Outside of Elvira Hernandez, he kept in touch with almost everyone. He even visited Franklin and went to see Franklin. He also stayed at Elvira's house several times.

. . . .

Q:    You say here, "I look forward to meeting with him on May 22nd and welcome his arrival." Did you meet with Mr. Cruz on or around May 22 of 2007?

A:    I ran into him in the trade because they were doing a market visit.

Q:    And Mr. Cruz is with Barcelo?

A:    Yes.

Q:    Did you have an understanding about    why he was trying to contact you?

A:    They were thinking of expanding the product and were just kind of snooping around and seeing the trade and what the U.S. market was about. And it was customary. We receive people from Heineken. There's one shelf. And on the shelf, you know, 50 of us have to    fit. So we don't, you know, we kind of -- we're not rude

7

to each other if we're in the trade.  And we kind of, you know, we're cordial to one another.  So, we had, for example, Heineken in the Dominican Republic worked with us.  But then here it was different.  So we would receive people from Heineken and go out in the trade with them.  We would receive people from different brands.  So in this case, Leoni said to me that they would be in the trade, that, you know, receive them, say hi,    you know, if there's anything that they need, you know, fine.  And fine.  So that's what he was referring to in this e-mail.

Q:      Was there any discussions that you had with Mr. Cruz in May of 2007 or at any    time afterward about the possibility of joining Barcelo or part of the Barcelo group?

MR. HAGER: Objection to form.  You can answer.

THE WITNESS: Answer or don't answer?

MR. HAGER: You can answer.

A:      Yes.  If the brand ever came to this country, that they would be interested in discussing that opportunity.

Q:      And then you sign this e-mail to Mr. Marti "regards Jacqueline". Correct?

A:      Correct.

Hone Dep. T169-17 to 175-5, Hager Dec., Exhibit C.

Plaintiff's foregoing testimony about the April and May, 2007 e-mails with Leoni Marti provides no basis for Defendants' argument that they somehow evidence her starting her own business, or even planning it.  Instead, the testimony evidences Plaintiff engaging in what she understood to be standard business practices with other members of the beer export industry. Her testimony was that older reports, from years past, were commonly shared amongst the distributors, and her sharing Presidente's 2003 report with Marti in 2007 was part of that industry practice.  Defendants' argument that these e-mails "suggest that she was actively engaged in

8

pursuing her business venture" before her constructive discharge, and application for

unemployment benefits, is baseless and should therefore be rejected.[2]

**B.**   **Plaintiff Hone's Testimony About Forming Ubiquity, LLC, After Her Constructive Discharge**

Exhibit J to Defendants' moving declaration conclusively evidences that Plaintiff formed

Ubiquity, LLC, on August 20, 2007. There is no dispute that her constructive discharge date was

July 20, 2007. Defendants contend – without any competent basis - that the proximity of these

dates is evidence that she was not constructively discharged but, instead, resigned to work in her

new business. Defendants fail to inform Your Honor about any of Plaintiff Hone's deposition

testimony about when, and why, she formed Ubiquity, LLC. Her testimony, which is entirely

inconsistent with Defendants' incompetent argument, was as follows:

> Q:   Miss Hone, are you familiar with a company called Ubiquity, LLC?
>
> A:   Yes.
>
> Q:   What is the form of business?  Is it a corporation, a sole proprietorship or   something else?
>
> A:   Sole proprietorship.
>
> Q:   What is your understanding of what   it means to have the term LLC afterwards?
>
> A:   I don't really know.  I filed the company by myself.  And when I went to the office to have it filed, the woman at the desk kind of did all of that for me.  She helped me out because I don't really understand the meaning of that.

---

[2]   Although Defendants' motion attaches Plaintiff's post-discharge electronic communications with Marti, and allege in their preliminary statement that they somehow "call into question the veracity" of her sexual harassment claims, Defendants fail to explain how those messages relate to their motion.  In any event, it cannot be reasonably disputed that Marti sexually harassed Plaintiff Hone, as illustrated in a passionate Valentine's Day card he gave to her where he handwrote "I Love You".  Hager Dec., Ex. D.

Q:     When you say you filed the company,   where did you do the filing?

A:     In an office, state office, New Jersey State something or other.  I don't remember.

Q:     When did you make that filing?

A:     At the end of August in 2007.

Q:     Is that company still operating today?

A:     Yes.

Q:     And briefly, could you tell me what it does?

A:     What I really did was I needed, you know, any form of income.  So what I was trying to do was if I could free-lance or if I could, you know, work on anything that I had done previously, whether it be pre-recruiting or whether it be selling promotional items or doing marketing.  So it's really A to Z anything that I have done.  If the opportunity came up, I wanted to be able to, you know, bill myself out and have them somewhere that they could write a check to basically.  So I went to Hackensack.  There was an office in Hackensack.  And they said that I could very easily just give myself a name.  And then they referred me to another office which is in Fair Lawn for the -- I don't really remember the difference of the two.  But to, like, register it.  And they walk you through it as a minority and small business.  And that was -- that was the purpose and that is the purpose.  I continue to sell myself that way.

Q:     Has Ubiquity been in existence from August of 2007 continuously until today?

A:     Yes.  It's been registered.

Hone Dep. T62-1 to 64-4, Hager Dec., Ex. C.

     Plaintiff's testimony plainly demonstrates, and Defendants do not dispute, that she formed Ubiquity, LLC, on August 20, 2007, in an attempt to generate income.  She described the nature of the business to be "pre-recruiting" or "selling promotional items or doing marketing." Clearly, Plaintiff has not gone into the business of selling, exporting, or marketing beer, which is

the nature of Defendants' business.  She also is not a Barcelo employee or agent, as Defendants' motion seems to imply.

The competent evidence demonstrates only that she created her business after her constructive discharge, which bears out the fishing expedition in Defendants' motion.  While Defendants allege "that during the months preceding her [constructive discharge] plaintiff began establishing her new business, Ubquity, LLC, and may well have begun concrete steps in pursuit of that plan", the competent evidence belies this allegation and demonstrates why Defendants' motion to compel the statutorily confidential unemployment records should be denied in its entirety.  So, too, should this Court deny Defendants' unsupported request for an adverse inference "throughout discovery, dispositive motions and trial".  (Db12).

**POINT TWO**

**DEFENDANTS' UNPRECEDENTED AND BASELESS
REQUEST FOR AN ADVERSE INFERENCE SHOULD BE
DENIED**

The last point in Defendants' motion seeks an adverse inference for the rest of this case, including trial, because, according to the Defendants, Plaintiff Hone has failed to produce the unemployment records at issue on this motion.  There is no dispute, however, that Plaintiff does not have the documents and, moreover, they are unambiguously confidential by statute and also irrelevant to this case.

The United States Supreme Court established in Baxter v. Palmigiano that an adverse inference may be invoked where a party to a civil action "refuses to testify in response to probative evidence offered against them."  425 U.S. 308, 318 (1976).  That is decidedly not the case herein as Plaintiff has testified in deposition about the electronic communications with Marti before her constructive discharge, and about her forming Ubiquity, LLC, one month after

her constructive discharge.  She also is not refusing to produce unemployment records, as Defendants contend, and Defendants have made absolutely no showing for this Court to override the records' confidentiality as intended by N.J.S.A. 43:21-11(g).

In a spoliation of evidence context, which may be analogized to Defendants' position that Plaintiff Hone has "impede[d] access to her unemployment records", it is settled in this District that a party must establish four elements before an adverse inference may be used.  Kounelis v. Sherrer, 529 F. Supp.2d 503, 520-21 (D.N.J. 2008).  The four elements are as follows:

1.    the destroyed evidence must be found to have been in the alleged spoliator's control;

2.    it must appear that there has been actual suppression or withholding of the evidence;

3.    the destroyed evidence must be found to be relevant to a claim or defense of the party seeking the evidence; and

4.    it must have been reasonably foreseeable to the spoliator that the evidence would be subject to discovery.

On this motion record, it is clear that Defendants cannot satisfy these requirements. Plaintiff Hone has never had the demanded unemployment records, and clearly could not have refused, or suppressed, their production.  Based on Plaintiff's deposition set forth herein, Defendants also have not shown how the confidential unemployment records are relevant to their allegations about the basis for Plaintiff's constructive discharge, or formation of Ubiquity, LLC. These reasons provide ample support for denying Defendants' request for an adverse inference, which is unaccompanied by a single citation to authority.

In addition, even if a court finds that all 4 of the elements exist, it retains the discretion to refuse a requested adverse inference. Id. Plaintiff Jacqueline Hone respectfully submits that Defendants' drastic request for an adverse inference to be imposed for the remainder of this case, without any factual or legal basis for that request, should be denied. It presents issues of substantial prejudice to Plaintiff Hone that further support denying the request.

## CONCLUSION

For all of the foregoing reasons set forth in these opposition papers, Plaintiff Jacqueline Hone respectfully requests that Defendants' motion to compel production of statutorily confidential unemployment records be denied.

Respectfully Submitted,
NIEDWESKE BARBER, LLC

Christopher W. Hager

Date:  June 19, 2009