**LITTLER MENDELSON**
A Professional Corporation
One Newark Center – Eighth Floor
Newark, New Jersey 07102.5311
973.848.4700
Attorneys for Defendants
    Gevity HR, Inc., Presidente U.S.A., Inc., Cerveceria Nacional Dominicana, and
    Grupo Leon Jimenes

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| JACQUELINE HONE,<br><br>               Plaintiff,<br><br>vs.<br><br>PRESIDENTE U.S.A., INC., CERVECERIA<br>NACIONAL DOMINICANA, GRUPO LEON<br>JIMENES, LTD., ADMINISTAFF, INC.,<br>GEVITY H.R., and PHILLIP MORRIS,<br><br>               Defendants. | Civil Action No. 07-5635 (HAA) (ES) |

---

## REPLY MEMORANDUM OF LAW IN SUPPORT OF MOTION TO COMPEL THE RELEASE OF PLAINTIFF'S UNEMPLOYMENT RECORDS

---

On the Brief:

    Eric A. Savage, Esq.
    Geida D. Sanlate, Esq.

# TABLE OF CONTENTS

PAGE

TABLE OF AUTHORITIES ............................................................................. ii

PRELIMINARY STATEMENT ......................................................................... 1

I.  PLAINTIFF'S UNEMPLOYMENT RECORDS ARE DIRECTLY
    RELEVANT TO THIS CASE AND, THUS, DISCOVERABLE EVEN IF
    ULTIMATELY NOT ADMISSIBLE IN TRIAL. .................................................. 2

    A.  The Court's Liberal Interpretation of the Discovery Rules Compels
        Disclosure of the Unemployment Records. .............................................. 2

    B.  Plaintiff's Unemployment Records Are Directly Relevant to the
        Issues in This Case and Will Likely Lead to Admissible Evidence. .......... 3

II. DISCLOSURE OF PLAINTIFF'S UNEMPLOYMENT RECORDS IS
    PERMISSIBLE, EITHER WITH PLAINTIFF'S AUTHORIZATION OR
    THROUGH A COURT ORDER. ...................................................................... 4

    A.  Nothing in N.J.S.A. 43:21-11(g) Bars The Relief Sought Here. ............... 4

    B.  Collateral Estoppel Does Not Apply Here With Regard To
        TheYahoo! Subpoena. ....................................................................... 6

III. THE COURT SHOULD DRAW AN ADVERSE INFERENCE FROM
     PLAINTIFF'S REFUSAL TO PRODUCE OR OTHERWISE
     AUTHORIZE THE DISCLOSURE OF THE UNEMPLOYMENT
     RECORDS. .............................................................................................. 8

CONCLUSION ............................................................................................. 9

# TABLE OF AUTHORITIES

**Page**

**Cases**

*Caver v. City of Trenton,*
    192 F.R.D. 154 (D.N.J. 2000) ........................................................................ 2

*City Ettin v. Ava Truck Leasing, Inc.,*
    53 N.J. 463 A.2d 278 (N.J. 1969) ................................................................. 6

*Jones v. DeRosa,*
    238 F.R.D. 157 (D.N.J. 2006) ................................................................... 2, 3

*MOSAID Tech., Inc. v. Samsung Elec. Co.,*
    348 F. Supp. 2d 332 (D.N.J. 2004) ........................................................... 7, 8

*N.J. Phila. Presbytery of the Bible Presbyterian Church v. N.J. State Bd. of Higher*
    *Educ.,* 654 F.2d 868 (3d Cir. 1981) ............................................................ 6

**Statutes**

*N.J.S.A.* 43:21-11(g) .................................................................................... 1, 7

**Rules**

*Fed.R.Civ.P.* 26(b)(1) ................................................................................... 2, 3

*L.Civ.R.* 26.1 ................................................................................................... 7

**Secondary Authority**

8 *Wright & Miller, Federal Practice and Procedure* § 2043, at 305 (1970) ...................... 5

Firmwide:90677107.3 046687.1081

## PRELIMINARY STATEMENT

Defendants Gevity HR, Inc., Presidente USA, Inc. ("Presidente"), Cerveceria Nacional Dominicana, and E. Leon Jimenes, sued herein as Grupo Leon Jimenes ("GLJ") (collectively, "defendants"), submit this Reply Brief in further support of their motion to compel the release of plaintiff's unemployment records.

Plaintiff cannot dispute the relevance of her unemployment records, which directly bear on the issue of her eligibility for unemployment compensation, the impact on mitigation issues, whether the reasons she furnished to the New Jersey Department of Labor ("Department") for her resignation are consistent with the allegations contained in the Complaint, and her overall credibility.

Nothing in *N.J.S.A.* 43:21-11(g) bars plaintiff from seeking copies of her own records and, by remaining silent on this point in her opposition, plaintiff concedes as much. Similarly, plaintiff has not disputed that the Department's Legal and Regulatory Services is authorized to produce plaintiff's unemployment records with a Court Order directing their release. Instead, plaintiff introduces plaintiff's deposition testimony and the Yahoo! subpoena California court decision in an effort to divert the Court's attention from the real issues to matters completely irrelevant to the instant motion.

Plaintiff's adamant stance against the disclosure of the unemployment records at issue is perplexing since she has already authorized the release of medical and psychological records from at least nine healthcare providers. Although plaintiff apparently recognizes that by putting her medical and psychological condition into issue, she was required to waive her doctor-patient privilege, she nonetheless refuses to authorize the release of her unemployment records, even though she has placed her

economic condition into issue by alleging that she was "constructively discharged" and by asserting economic damages.

The Court can and should draw an adverse inference from plaintiff's refusal to produce or otherwise authorize the disclosure of the unemployment records. It can be inferred from the facts of this case that plaintiff was already considering litigating her claims when she applied for unemployment compensation benefits. Therefore, plaintiff was under a duty to preserve all documents related to her application for unemployment benefits given their evidentiary value with respect to her claims for "constructive discharge" and economic damages. Accordingly, an adverse inference drawn against plaintiff is warranted in this case, especially in light of plaintiff's continuing failure to consent to the release of documents that she could release, but refuses to do so.

For the foregoing reasons, defendants' motion should be granted.

## ARGUMENT

I. **PLAINTIFF'S UNEMPLOYMENT RECORDS ARE DIRECTLY RELEVANT TO THIS CASE AND, THUS, DISCOVERABLE EVEN IF ULTIMATELY NOT ADMISSIBLE IN TRIAL.**

### A. The Court's Liberal Interpretation of the Discovery Rules Compels Disclosure of the Unemployment Records.

The Federal Rules adopt a liberal policy governing discovery in civil matters. As provided in Rule 26, a party may obtain discovery regarding any matter that it is relevant based on either a "claim or defense of any party" or the "subject matter involved in the action." *See generally Fed.R.Civ.P.* 26(b)(1). "Courts have construed this rule liberally creating a broad range for discovery which would encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." *Jones v. DeRosa*, 238 F.R.D. 157, 163 (D.N.J. 2006) (citing *Caver v. City of*

*Trenton*, 192 F.R.D. 154, 159 (D.N.J. 2000) (internal quotations omitted)).  "Whether certain documents are relevant for discovery purposes is viewed in light of the allegations of the complaint, not as to evidentiary admissibility." *Jones*, 238 F.R.D. at 163.

**B.     Plaintiff's Unemployment Records Are Directly Relevant to the Issues in This Case and Will Likely Lead to Admissible Evidence.**

Defendants recognize that since the case is still in discovery, the Court is not required to accept as definitive statements any testimony or contentions of any of the parties, including that of plaintiff.  However, that is precisely what plaintiff is seeking to accomplish in her papers, namely, presenting her side of a story, suggesting that her version is definitive, and then arguing that discovery should be curtailed because plaintiff's version of the story must be accepted.

Such an argument has no basis.  Plaintiff should not be allowed to convert the discovery phase of this case into a summary judgment motion, particularly since plaintiff's deposition has not been completed and her alleged supporting witnesses have not yet been located, let alone deposed.[1]  To allow plaintiff to foreclose discovery based on the argument that defendants are factually mistaken would be highly prejudicial and contrary to the letter and spirit of the Federal Rules.  *See generally Fed.R.Civ.P.* 26(b)(1).

---

[1] It should be noted that defendants anticipate that upcoming depositions will contradict Plaintiff's allegations of sexual harassment. Witness testimony will establish that Plaintiff and Leonidas Marti ("Mr. Marti"), the only harasser named in the Complaint, developed and maintained a close friendship during the time they worked together. Plaintiff seemed to enjoy Mr. Marti's attention and remained in contact with him after his departure from Presidente in the summer of 2005, and even after the commencement of this suit in October 2007. Defendants have been advised that their relationship ended once Mr. Marti learned of plaintiff's allegations and confronted her about them through a Yahoo!'s Instant Messenger electronic communication in or about December 2007. (Savage Dec., Exh. B). Finally, although plaintiff testified at deposition that it was "industry standard" to send volume reports to competitors, (Pl.'s Opp. Brief, p. 6), defendants will establish through witness testimony that these were in fact confidential reports that plaintiff sent to Mr. Marti, apparently as part of her efforts to land a deal to perform marketing services for Mr. Marti's employer before her resignation.

3

Rather, the issue before the Court is whether the unemployment records sought are relevant and, if so, whether these records should be released.

Although plaintiff seeks to downplay the relevance of these materials, she cannot dispute their importance on issues such as her eligibility for unemployment, the impact on mitigation issues, whether the reasons she furnished the Department are consistent with the allegations of the Complaint, and her credibility as a whole.   Plaintiff's production of unemployment benefits pay stubs does not answer these questions.  (*See* Motion Brief, pp. 5-7).

Denying defendants the opportunity to ascertain the truth about this matter and to develop discovery with relevance to important issues in the case will constitute an irreparable prejudice to them.  Accordingly, plaintiff should be compelled to execute the Consent Order or, in the alternative, the Court should enter an Order directing the Department to release the unemployment records.

## II.   DISCLOSURE OF PLAINTIFF'S UNEMPLOYMENT RECORDS IS PERMISSIBLE, EITHER WITH PLAINTIFF'S AUTHORIZATION OR THROUGH A COURT ORDER.

### A.   Nothing in *N.J.S.A.* 43:21-11(g) Bars The Relief Sought Here.

As discussed more fully in the Motion Brief, nothing in the statute prohibits disclosure when sought by the claimant through an express authorization, (Motion Brief, pp. 8-11).  By remaining silent on this point in her opposition, plaintiff concedes as much.

Plaintiff's opposition essentially admits that Department's Legal and Regulatory Services has the authority to release the unemployment records with a Court Order directing their release. (Motion Brief, p. 9, citing Savage Dec., Exh. G).     As noted

earlier, defendants have repeatedly offered a protective order to limit the use of any data so obtained in this action and to limit the dissemination of the document and information to defendants, their counsel and experts so as to safeguard plaintiff's privacy.  (*Id.*); *see generally* 8 *Wright & Miller, Federal Practice and Procedure* § 2043, at 566 (West 1994) ("The most common kind of order allowing discovery on conditions is an order limiting the persons who are to have access to the information disclosed and the use to which these persons may put the information.").  Protective orders are not uncommon when a party asserts an issue of confidentiality, and plaintiff's opposition fails to explain why a protective order would not be an appropriate alternative to her draconian stance to deny defendants the opportunity to ascertain the truth through discovery.

Plaintiff's opposition also seeks to escape her discovery-related duties by claiming that she is not in possession of the unemployment records being sought. However, that argument not only misses the point, but in fact demonstrates why defendants' application should be granted.

If plaintiff had retained a copy of her unemployment application and communications with the Department, it is hard to imagine that she would have withheld production of materials in her possession based on the statute. However, since she did not keep these papers, whether intentionally or otherwise, defendants are left with no choice but to pursue the next-best alternative, obtaining them from the Department with plaintiff's permission or under an Order of this Court.  In essence, plaintiff is seeking to hinder defendants' development of legitimate and necessary discovery based on her less-than-complete record keeping.  This result would turn on its head the fundamental concept of full and open disclosure as to all proper factual issues.

Moreover, nothing prevents plaintiff from authorizing the release of these documents now, for a limited purpose and for non-public review. In fact, plaintiff has already authorized the release of medical records from at least nine healthcare providers, including a psychologist who met with plaintiff while treating her children, (*See* Savage Dec., dated June 29, 2009 ("Savage Dec. II"), Exh. B), all of whom have released her medical records. Plaintiff no doubt recognized that by putting her medical and psychological condition into issue, she waived the doctor-patient privilege.

Similarly, by placing her economic condition into dispute, by alleging that she was "constructively discharged", and by opening up issues about mitigation of alleged economic damages, plaintiff opened the door to the kind of inquiry now being sought. Further, other than simply relying on the statute and the qualified privilege against public disclosure that it provides, plaintiff has failed to articulate any personal privilege attached to these documents or to explain why, if the documents can be released with her consent, plaintiff should not be compelled to authorize such release, especially in light of her previous voluntary waivers of privilege to her medical and mental health records.

**B.    Collateral Estoppel Does Not Apply Here With Regard To TheYahoo! Subpoena.**

Plaintiff apparently wants the Court to apply collateral estoppel principles by suggesting that her success on a motion quashing defendants' subpoena addressed to Yahoo! for the electronic communications exchanged between plaintiff and Mr. Marti compels denial of the motion. (See Pl.'s Opp., FN1). *N.J. Phila. Presbytery of the Bible Presbyterian Church v. N.J. State Bd. of Higher Educ.*, 654 F.2d 868, 876 (3d Cir. 1981) (collateral estoppel applies only when a final judgment is issued on the basis of a determination of an identical legal issue or fact) (citing *City Ettin v. Ava Truck Leasing,*

*Inc.,* 53 N.J. 463, 251 A.2d 278 (N.J. 1969)).  Collateral estoppel does not apply here because the California court never addressed the relevancy of the unemployment records to plaintiff's claim of constructive discharge and economic damages.  The present motion presents the Court with an entirely different issue and an entirely different statutory provision, i.e., *N.J.S.A.* 43:21-11(g), and plaintiff cites to no law holding that the federal statute at issue in connection to the Yahoo! subpoena should be the guidepost to interpret New Jersey's Unemployment Compensation Law.

Instead, the Yahoo! subpoena motion presents another instance of plaintiff's continuing efforts to block necessary discovery.  Defendants issued the Yahoo! subpoena after receiving copies of plaintiff's electronic communications with Mr. Marti. Defendants strongly believe that, had plaintiff authorized the disclosure of her electronic communications with Mr. Marti, Yahoo! would have produced electronic communications exchanged between plaintiff and Mr. Marti that plaintiff has not yet produced.  In fact, the only reason that defendants knew of such electronic communications was because they received them from Mr. Marti, (Savage Dec., Exhs. B and C), as plaintiff has failed to produce these or other emails between her and Mr. Marti despite her continuing duty to produce all electronic documents potentially relevant to her claims, pursuant to *L.Civ.R.* 26.1.  *See generally MOSAID Tech., Inc. v. Samsung Elec. Co.,* 348 F. Supp. 2d 332, 339 (D.N.J. 2004) (discussing rules with regard to e-discovery).

Another example of plaintiff's tactics is her counsel's letter to Nariel Computers and Elias Ocasio directing them to withhold production of the documents relating to the construction and maintenance of plaintiff's business' website without any legal support

for her claim of privilege over those documents. (Savage Dec. II, Exhs. E and F). To our knowledge, that letter has not been rescinded, despite the Court's May 19, 2009 ruling that such documents are not privileged and that plaintiff lacked standing to challenge the subpoena. Plaintiff also has failed to produce the financial documents related to her business despite defendants' initial request and at least <u>four</u> discovery deficiency letters requesting release of same. (Savage Dec. II, Exh. A).

Plaintiff's response to the request for release of her unemployment records is therefore consistent with the strategy she has pursued elsewhere in discovery. The Court should not allow her to continue to do so and should instead grant defendants' motion.

### III.   THE COURT SHOULD DRAW AN ADVERSE INFERENCE FROM PLAINTIFF'S REFUSAL TO PRODUCE OR OTHERWISE AUTHORIZE THE DISCLOSURE OF THE UNEMPLOYMENT RECORDS.

"The duty to preserve potentially relevant evidence is an affirmative obligation that a party may not shirk." *See MOSAID Tech, Inc., supra*, 348 F. Supp. 2d at 339 (affirming a spoliation inference jury instruction imposed by the magistrate judge on defendant allowing jury to conclude that destroyed evidence would have been unfavorable to offending party) .

Plaintiff resigned from her employment with Presidente on July 20, 2007. Two days later, plaintiff applied for unemployment benefits, which she began receiving in September, and, on August 1, through counsel, advised Presidente that plaintiff was seeking resolution of her claims to avoid litigation. (Savage Dec., Exh. F; Savage Dec. II, Exh. F). It therefore can be inferred that at the time her unemployment application was submitted to and while it was pending before the Department, plaintiff was already considering the option of litigating her claims against Presidente. Accordingly, plaintiff

was under a duty to preserve all of the documents related to her claim for unemployment benefits and an adverse inference should be drawn from her failure to produce all documents that in any way relate to her application for same.

However, even if she did not in good faith retain the documents, her decision not to allow the production of materials to which she controls access by means of a release that she could sign, is the functional equivalent of a refusal to make discovery. For the reasons advanced in the Moving Brief, plaintiff cannot have it both ways. If she wants to stand by her refusal to execute a release, she cannot simultaneously claim that her submissions to the Department were truthful and consistent with her claims in this case, and she cannot argue that she did disclose to the Department her new business. If plaintiff chooses to block this discovery, defendants must be allowed to argue that she has done so because she knows that the information to be produced would contradict other aspects of her claim.

## CONCLUSION

In light of the foregoing and the well-established policy favoring broad discovery encompassing any matter relevant to any issue in the case, notwithstanding its admissibility at the trial, we respectfully request the Court compel plaintiff to execute the Consent Order at issue or, in the alternative, enter an Order directing the Department to release plaintiff's unemployment records or draw an adverse inference against plaintiff as set forth more fully in the memoranda of law and documents filed in support of Defendants' motion.

9

Dated: June 29, 2009

**LITTLER MENDELSON, P.C.**
Attorneys for Defendants Gevity HR, Inc.,
Presidente U.S.A., Inc., Cerveceria Nacional
Dominicana, and Grupo Leon Jimenes


By: _E A Savage_____
        Eric A. Savage

10